# Miles Dougherty *v.* The Philadelphia & Reading Railroad, Appellant.

*Negligence—Explosion of blasting powder—Question for jury.*

Where blasting powder loaded on a car explodes and injures a person in a house situated at a distance of four hundred feet from the track where the car was standing, and sixty-eight feet below the level of the track, the question whether the explosion was an unavoidable accident, or was due to the negligence of the railroad company operating the car, is a question for the jury.

*Negligence—Railroads—Rules for operating cars—Evidence.*

In an action to recover damages for injuries caused by the explosion of blasting powder upon a car, it is error for the court to admit in evidence a set of rules for the running of trains dated five days prior to the date of the accident, but not actually delivered to the train men until twenty-one days after the accident, although the book contains a recital on its first page that the rules were framed to take effect from date.

Argued May 29, 1895. Appeal, No. 61, July T., 1895, by defendant, from judgment of C. P. Northumberland County, Sept. T., 1888, No. 72, on verdict for plaintiff. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Reversed.

Trespass to recover damages for injuries to plaintiff's wife and his furniture. Before LYONS, P. J., of the 41st judicial district, specially presiding.

At the trial it appeared that the injuries for which damages were claimed were caused by an explosion of blasting powder on a car. When the explosion occurred the train to which the powder car was attached was sixty-eight feet above the level of plaintiff's house, and about four hundred feet distant from it. Plaintiff claimed that the explosion was caused by the careless manner of making up and running the train.

Plaintiff offered in evidence book, No. 4654, entitled " Rules for the Government of Employees of the Philadelphia & Reading R. R. Co., to take effect May 1, 1888. This book supersedes Book of Rules dated January 1, 1876," and proposed to read from page 45, rule 189, under the head, " Rules for Conductors," said rule having reference to the placing of cars loaded with powder; to read rule No. 183 on page 44 as to

the position of the conductor when the train is backing; also rule 91, page 20, under the head of "Train Rules," directing what shall be done when a train is parted while in motion; also, rule 94 on page 21; also, on page 13, "Whistle Signals," rule 49.

The last rule was offered for the purpose of contradiction, and the others were offered for the purpose of showing negligence.

Defendant's counsel objected because the book had not been proved to have been published and issued by the defendant company for the guidance and government of its employees; the first witness who testified to it having left the service of the company a year before the accident in question, and the second witness having testified that he received it about a year before from an engineer of the defendant.

Also objected for the further reason that the plaintiff had proved, in reference to a book which was a duplicate of the one proposed to be offered, by a circular letter accompanying it, that the book was not delivered to the witness who was called to prove it, and who was an employee of the defendant at the time he received it, that it did not come into his hands until the 26th of May, 1888, and that the said book of rules was generally delivered to the employees at the same time; and also because the plaintiff had proved that the old book of rules was in force until the delivery of this copy,

It was therefore incumbent upon the plaintiff to show the delivery of this book, because, being for the government of the employees of the company, it would not govern them until actually delivered to them, and it was that character of book that the delivery of it should be proved.

By the Court: The book offered in evidence purports to be a book of rules for the government of the employees of the Philadelphia & Reading Railroad Company, and on the first page thereof it states that it is to take effect May 1, 1888. It also states that "This book supersedes Book of Rules dated January 1, 1876." We think that that is sufficient proof that these rules were in force in May, 1888, the book having been obtained from an employee of the company, and were prima facie the rules governing the employees of the company on May 1, 1888.

We therefore overrule the objection, admit the evidence, to

which the counsel for the defendant except and request the court to seal a bill, and at their instance this bill is sealed. [1]

The court under objection and exception overruled defendant's offer of the rules of 1876. [2]

The court charged in part as follows :

You will consider all this evidence carefully on the one side and the other, as well as on the part of the plaintiff as that of the defendant, and from it determine what the real facts are and where the truth is. You will remember that the plaintiff alleges that the employees of the defendant company were negligent, and that this negligence was the cause of the injury he sustained, and for which he now seeks to recover damages. Negligence has often been defined to be want of care under the circumstances.' It has also been defined to be the omission to do something, which a reasonable man, guided by those considerations which ordinarily regulate the conduct of men of affairs, would do; or the doing of something which a prudent and reasonable man would not do.

Now, gentlemen, you will take into consideration all the facts in this case and the circumstances with it, and from those facts and circumstances determine whether the defendant by its employees has been guilty of negligence or not. [You will take into careful consideration the character of the train and the freight it was hauling, the position of the car upon which the powder was loaded, the quantity of it, the character of the road at the point where the explosion occurred, the grade which the train was descending, whether or not the rules and regulations of the company were observed by those in charge of the train, and from all these facts and circumstances you will determine whether there was negligence on the part of the employees who were in charge of the train or not.] [3]   If you find there was no negligence on their part you need inquire no further; that is the end of the case and your verdict should be for the defendant.   We say to you that negligence is never presumed. He who alleges negligence on the part of another must prove it.   The law presumes that every one, from motives of self interest, will exercise that care which common prudence requires, and therefore it is that negligence must be proved. If, however, you find there was negligence on the part of the defendant you will then inquire whether or not that negligence caused the injury of which the plaintiff complains.

It is not denied that these injuries were caused by the explosion, but it is denied that the explosion was caused by the negligence of the defendant. That is the question you must determine under the evidence in the case. If you find that the explosion was not caused by the negligence of the employees of the defendant company, but that it occurred from some other cause, whether you are able to discover what that cause was or not, that is the end of the case and the plaintiff cannot recover. The negligence of the defendant must have caused the explosion, which produced the injury, or the plaintiff cannot recover.

[If you find that the explosion was caused by the negligence of the defendant, then a third question arises, were those injuries of which the plaintiff complains the direct and natural result of the explosion, or was there some other active intervening agent which caused the injury? I cannot discover any, but submit it to you to find, under all the evidence in the case, whether there was or not.] [4]

Plaintiff's point, among others, was as follows:

2. That the violation of the rules of the company as to the transportation of gunpowder and its place in the train at the time of the explosion, and the neglect to comply with the rules of the company where the train is parted, is evidence of negligence, if under all the testimony it is found such rules were not complied with. *Answer:* This point is affirmed. [5]

Defendant's points, among others, were as follows:

1. That under all the evidence in the case the verdict must be for the defendant. *Answer:* This point is refused. [6]

6. A proximate cause must be indicated by a probable result, and the connection between the injury sustained by the plaintiff and any alleged negligence on the part of the railroad company by which the train was broken, resulting in the explosion which caused the injury sustained by the plaintiff, is too remote and the verdict must be for the defendant. *Answer:* This point is refused, but we refer the matter to you to say, under all the evidence in the case, whether the explosion of the powder was caused by the negligence of the defendant, and, if it was, whether the injury sustained and the damages which resulted therefrom were the natural and probable results thereof. [7]

Verdict and judgment for plaintiff for $1,300.

*Errors assigned* were, (1, 2) rulings on evidence, quoting the bill of exceptions; (3–7) above instructions, quoting them.

*S. P. Wolverton*, *C. M. Clement* with him, for appellant.— There can be no legal liability for an injury inflicted by one upon another if the cause of the injury was unusual, and one which reasonable and careful human foresight could not have foreseen, and one which under the circumstances such care and foresight could not have guarded against.

The court admitted the new book of rules notwithstanding in the front part of it there was a circular dated May 26, and signed by the superintendent, showing conclusively by the circular as well as by the testimony of the witness on the stand, that it had not been delivered, and was not in use, merely because the book stated itself that it would take effect on the 1st of May, 1888.   The court held that this placing of the powder at the rear of the loaded part of the train and ahead of the empties, instead of at the rear of the whole train, might be considered by the jury as evidence of negligence on the part of the defendant because of violation of a rule.   If the court were right in this instruction, then the admission of the book, which was not proved to be in force or delivered, did the defendant great injury, because the evidence clearly showed that the car of powder had been placed in the train according to the requirements of the old rules and not the new.

Had the old rules been admitted, the evidence would have shown that the train was made up strictly according to the rules of the company, and that the men conformed to these rules strictly in the management of the train after it broke asunder.

The company was not guilty of any breach of duty which it owed to the plaintiff: Phila. & Reading R. R. v. Spearen, 47 Pa. 300; Scott v. Hunter, 46 Pa. 192; 7 Am. & Eng. Ency. of Law, 517; Brown v. French, 104 Pa. 604; Patton v. East Tennessee, V. & G. R. R., 12 Lawyers' Rep. 184; McCauley v. Logan, 152 Pa. 202; Koelsch v. Phila. Co., 152 Pa. 355; Hoag & Alger v. Lake Shore & Mich. Southern R. R., 85 Pa. 293; Penna. R. R. v. Hope, 80 Pa. 373; Penna. R. R. v. Kerr, 62 Pa. 353; Allegheny v. Zimmerman, 95 Pa. 287; McGrew v. Stone, 53 Pa. 436; Sweeny v. Old Colony & Newport R. R., 10 Allen, 368.

*James Scarlet* and *P. A. Mahan*, for appellee.—In handling explosive substances involving the personal safety and lives of others, due care and diligence are nothing less than the most watchful vigilance and most active diligence: Gray v. Mobile Trade Co., 55 Ala. 387; F. & B. Turnpike Co. v. P. & T. R. R., 54 Pa. 345; Keiser v. Gas Co., 143 Pa. 276; Patterson's Railway Accident Law, 438.

The rules were evidence for the purpose of showing what ought to have been done by the defendant in avoiding the accident. They were evidence of what the defendant recognized as due care in the transportation of explosives. If, as defendant contends, they were not in force at the time, then at or about the time, they were precautions taken by the company, which should have been done long before. If they were taken after the accident then they were evidence under the ruling of this court in McKee v. Bidwell, 74 Pa. 218.

But the books of the corporation were competent to show that it had taken every precaution: Weightman v. Corp. of Washington, 1 Black, 3946. They were an admission of the danger attendant upon this duty. If, therefore, they were evidence for any purpose, the court could not have rejected them without manifest error: Murphy v. Richardson, 28 Pa. 288; Baldorf v. Farmers Bank, 61. Pa. 179.

OPINION BY MR. JUSTICE WILLIAMS, October 7, 1895:

The accident from which the plaintiff in this case suffered was, to say the least, an extraordinary one. A car loaded with blasting powder, while being moved over the defendant's railroad as part of one of its freight trains, was exploded. The plaintiff's house which stood sixty feet below the track and at a distance of four hundred feet from it was affected by the explosion; his furniture was damaged, and his wife quite seriously hurt. This action was brought to recover for the loss sustained by him. The defense alleged that the accident was unavoidable; and, if unsuccessful in this position, that the injury complained of was not a natural or probable result of the accident which it was the duty of the company to foresee and provide against. Both questions were upon the evidence in this case questions of fact for the jury, and the sixth assignment of error which asked a binding instruction in favor of the defendant

cannot therefore be sustained.   Whether the explosion was an unavoidable accident or was due to the defendant's negligence was not a question of law, and the learned judge was right in submitting it, upon the evidence, to the decision of the jury. Nor do we think that just complaint can be made of the manner in which the question was presented to them.

The serious questions for the appellee are presented by the first and second assignments of error.   On the trial the plaintiff undertook to show affirmatively the negligence of the defendant's employees by showing that in placing the car containing the powder in the train they disregarded the rules the company had provided for their guidance.   It appeared that one set of rules had been in force up to some time in May, 1888. Another set had been adopted by the officers which had been intended to take effect on the 1st day of May, 1888, but which for some reason had not been promulgated until after the 20th. The accident happened on the evening of the 5th of May, 1888. The plaintiff offered the latter set of rules regulating the making up of trains, the signals to be used, and the precautions to be taken in case of the parting of a train while on its journey, on the supposition that they were in actual use on the 5th of May.   It appeared however that they were not distributed or placed in the hands of employees until near the close of the month.   For this reason the learned judge rightly rejected them.   They were again offered without any accompanying testimony as to the time of their delivery, and were admitted notwithstanding the testimony that had been previously given upon this subject tending to show that the actual delivery of these rules to the employees did not take place till about the 26th of the month.   The reason given for this action by the learned judge was that the book of rules bore on its first page a statement that the rules contained in it were to take effect May 1, 1888, and that it was to supersede the book of rules dated January 1, 1876.   This he held to be evidence prima facie that the rules offered were in full force on the 1st day of May, 1888.   But the testimony which had been given to the court in support of the offer of the same set of rules was in the case.   Upon its practically conclusive showing that these rules were not in force at the time of the accident, the learned judge had rejected them and sealed a bill of exceptions to his ruling

at the request of the plaintiff. Unless testimony fairly over-coming the effect of that on which his rejection of the book of rules had been based was presented for his consideration, or he had become convinced that his rejection of the book was an error, his admission of it was inconsistent with his former ruling, and it was in the face of the testimony already on the record. It was erroneous and requires us to sustain the first assignment of error.

For the same reason the second assignment must be sustained. The defendant company offered the first book of rules, alleging that the rules contained in it were in force on the 5th day of May, 1888, and that this appeared in the testimony of the plain-tiff. The defendant also called witness to show that the book of 1888 was not issued to the employees until after the accident, but that the book of 1876 was that which was in force at that time and by which the employees were governed.

In the course of the examination of one or more of these wit-nesses, it appeared that they had on receiving the new book of rules been required to sign a receipt therefor in the office of the company at Tamaqua. The learned judge rejected the offer, holding that because the written receipts would show the exact date on which each employee received his copy of the new rules the company was bound to produce the receipts, and not hav-ing done so could not show the fact that the new rules were not in force on the 5th of May, 1888, in any other manner. He characterized the receipts of the employees as "the best evi-dence of the time when these rules went into effect," although the receipts only stated when the copy came into the hands of the employee who signed it. When they should take effect was for the company to determine and to announce by some general order or circular letter, such as one of the witnesses tes-tified accompanied each book of rules. But the fact that the new rules were not in force and had not been put in the hands of the employees until after the accident happened was suscep-tible of proof by the testimony of any one who knew it. On the part of the plaintiff the only evidence for the jury upon this subject was the recital on the first page of the new book of rules that they were framed to take.effect on the 1st day of May, 1888. To this prima facie showing it was perfectly competent to reply that the book was not in fact put in the hands of the

employees for use until a later period, and that on the 5th day of May, when the accident happened, it was not in the hands of the train men who had charge of the train in which the car load of powder was.   The exact date when the new rules went into operation was not important.   The question was, were they in operation on the 5th day of May?   A violation of the rules in force at the time would be evidence upon the question of negligence on the part of the employees which the court could not withhold from the jury.   It might not be conclusive, but upon the subject of its competency the learned trial judge was right.

It became important therefore to inquire what rules were in force when the train to which the accident happened was made up?   And were the rules in force at the time substantially followed by the persons in charge of the train.   If so, negligence would not ordinarily be imputable to them.   The result of the rulings brought to our attention by the first and second assignments of error was that the jury had necessarily to determine this question of the negligence of the train men in the management of their train by the application of a set of rules which were not in force at the time, and the requirements of which they were not bound to know or obey.   To what extent this mistake controlled the verdict it is not possible now to determine, but that it may have influenced it, is a sufficient reason for reversing the judgment.

The other assignments of error are overruled.   The judgment is reversed and a venire facias de novo awarded.