Allen S. Thatcher v. Central Traction Co., Appellant.

*Negligence—Street railways—Wagons on track—Proximate, remote or intervening cause—Contributory negligence.*

In an action against a street railway company, to recover damages for personal injuries, it appeared that defendant operated a double line of railway on a street where there was a steep grade. At the time of the accident plaintiff was driving a light wagon on the right hand track going up the hill. To let a car pass he turned into the left hand or down track. Coming towards him on the down track was a heavy wagon, followed by

a cable car, which was running at a very high rate of speed. To let the car pass the heavy wagon turned towards the other track, and at the same time plaintiff turned in the same direction. The heavy wagon cleared the down track, but interfered with plaintiff so that he could not get his wagon off the track, and it was struck by the down-coming car, and plaintiff was injured. *Held,* that there was no question of proximate or remote cause or the interposition of an independent responsible cause which produced the result, and that the question of defendant's negligence was for the jury.

If the speed of the car was a dangerous and negligent one, the natural consequence was that, on a much traveled street, those in peril would obstruct each other's movements in attempts to escape. This was one of the very contingencies which defendant was bound to foresee and avoid by due care, for it would be the natural and probable result of high speed. By MR. JUSTICE DEAN.

It is not negligence per se for a citizen to be upon the tracks of a street railway. So long as the right of a common user of the tracks exists in the public, it is the duty of passenger railway companies to exercise such watchful care as will prevent accidents or injuries to persons who, without negligence on their own part, may not at the moment be able to get out of the way of a passing car.

Where the gripman of a motor car runs his car at a high rate of speed, when the probable consequence will be a collision with wagons ahead of the car on the track, and there is evidence that the car could not have been stopped until it reached a point three hundred feet beyond the point where the cars collided with a wagon, the question of the company's negligence is for the jury.

Argued Nov. 9, 1894.  Appeal, No. 305, Oct. T., 1894, by defendant, from judgment of C. P. No. 2, Allegheny Co., July T., 1893, No. 277, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for personal injuries.  Before MAGEE, J.

The facts appear by the opinion of the Supreme Court.

Defendant's points were among others as follows :

" 5. Under all the evidence in this case, if the jury believe that the direct cause of the accident was the fact that the wagon coming down the hill turned to the left just as Thatcher turned to the right, this was negligence on the part of the driver of the wagon coming down and is not to be attributed to the defendant company, and the verdict must be for defendant." Refused. [1]

6. Request for binding instruction. Refused. [2]
Verdict and judgment for plaintiff for $6,000.

*Errors assigned* were (1–2) instructions, quoting them.

*Thomas Patterson, E. W. Smith* with him, for appellant,
cited: Brownfield v. Hughes, 128 Pa. 194; R. R. v. Kelley,
102 Pa. 115; Traction Co. v. Bernheimer, 125 Pa. 619; Ehris-
man v. Ry., 150 Pa. 180; Gilmore v. Ry., 153 Pa. 31; Robb v.
Boro., 137 Pa. 42; Dean v. R. R., 129 Pa. 524.

*T. T. Donehoo, L. K. Porter, W. A. Boothe* with him, for ap-
pellee, cited: Gilmore v. Ry., 153 Pa. 31; Ehrisman v. Ry., 150
Pa. 180; Gibbons v. Ry., 155 Pa. 280; Kestner v. Traction Co.,
158 Pa. 422; Lott v. R. R., 159 Pa. 471; Kraut v. Ry., 160 Pa.
327; Burrell Twp. v. Uncapher, 117 Pa. 353.

OPINION BY MR. JUSTICE DEAN, Jan. 7, 1895:

On the 12th of February, 1891, about 3 o'clock in the after-
noon, the plaintiff, while driving with a companion in a light
sewing machine wagon on Wylie avenue, Pittsburg, was run
into by a cable car and very seriously injured. Wylie avenue
has a very steep grade for about 600 feet from the foot of Miners-
ville hill to the top. Fulton is a cross street at foot of the hill,
and Arthur a cross street at the summit level. Between these
are three other cross streets, Vine, Tannehill and Crawford,
about 150 feet apart. Wylie avenue is about thirty to forty
feet wide, being seven or eight feet narrower above Fulton street
than below; above Vine it curves toward Arthur. The defend-
ant occupies, with double tracks, the middle of the avenue, and
operates its railway by cable. Looking up the avenue from
Fulton, the ascending cars take the right hand track and the
descending cars the left hand one. Thatcher and his companion,
John Crusan, the latter having the lines, drove on Wylie ave-
nue and up across Fulton street in the direction of Crawford,
the next cross street, keeping on the right hand car track, when,
hearing a car behind them, and seeing wagons standing on the
space between the rails and curb on the street to the right, they
turned off on the left hand track for the car to pass; it passed
them between Crawford and Tannehill, when they attempted

to get back on the right hand track, at a point near Tannehill, but before they were entirely clear of the track, a car coming down struck the wagon, throwing both out, and Thatcher, falling under the car, had his left arm crushed, so that it is permanently useless. He brought suit for damages against defendant, averring negligence in running the car on a much traveled street at a high rate of speed, and in giving no notice of its approach to vehicles driven on the rails, so that they might avoid a collision. The evidence as to the circumstances tending to · show negligence or absence of it, was conflicting; it was submitted to the jury to find the fact by the learned judge of the court below in a very full charge. Of the six written points presented by counsel for defendant, he peremptorily affirmed four; the two negatived practically requested him to direct a verdict for defendant. There was a verdict and judgment for plaintiff in the sum of $6,000.

On appeal, error is alleged in negativing defendant's fifth and sixth points. The first of these asked the court to instruct the jury that if the direct cause of the collision was owing to the fact that a wagon coming down the avenue turned to the left just as plaintiff turned to the right and thus prevented him clearing the track and avoiding the collision, it was the negligence of the driver of the wagon which was the cause of the injury, and the company is not answerable.

As the plaintiff himself testified, "We attempted to pull back and in getting back on the other track, there was a wagon turned in front of us from the left hand track, and cut our way off from getting back, and the car that was coming down was coming at such a rate of speed that we couldn't get out of the way and it ran into us," an affirmance of this point would have been, in substance, an instruction that plaintiff could not recover. The assignment is without merit; as the driver coming down on the, to him, right hand track, suddenly made an effort to escape from the rapidly approaching car behind and turned to his left just as plaintiff turned to his right the driving of the wagon off the track was not the negligent interposition of an independent responsible cause which produced the result. On this question Wharton on Negligence, sec. 134, illustrates the application of the rule thus: "I am negligent on a particular subject matter as to which I am not contractually bound. Another person

moving independently comes in and, either negligently or maliciously, so acts as to make my negligence injurious to a third person. If so, the person so intervening acts as a non-conductor and insulates my negligence so that I cannot be sued for the mischief which the person so intervening directly produces." And the same rule, is, in substance, laid down in Bigelow's Cases on Torts, 611. The case in hand in its facts, is wholly outside the rule. The wagoner was moved by the same impelling motive as the plaintiff; both sought escape from the same impending danger; he neither acted maliciously nor negligently; both displayed prudence in acting with the utmost promptness. If the speed of the car was a dangerous and negligent one, the natural consequence was that on a much traveled street, those in peril would obstruct each other's movements in attempts to escape. This was one of the very contingencies which defendant was bound to foresee and avoid by due care, for it would be the natural and probable result of high speed; under such circumstances, one driver will not remain on the track and be run over that he may not impede another in his movement towards safety. There is no question of proximate or remote cause raised by the facts; nor of the interposition of an independent act of negligence to which the injury is lawfully attributable.

As to the 2d assignment, it is argued, there was not sufficient evidence of negligence of defendant to submit to the jury.

Taking the statements of witnesses on both sides, it seems the gripman did sound the gong at about Vine street but did not lessen speed, although then plaintiff's wagon was in full view and the up car passing them; it must have been plain to the gripman then, that the vehicle was on the left hand track, because it must get out of the way of the car going in the same direction; but there is the significant testimony as to the speed of the car, that it could not be stopped until it reached Fulton street, 300 feet beyond the point of the accident. It is not our duty now, nor was it that of the court below, to pass on the credibility of plaintiff's witnesses as to the rate of speed, and the absence of effort to stop the car when the danger was manifest. That was for the jury. If the gripman recklessly ran on at a high rate of speed, when the probable consequence was a collision, that was negligence for which defendant is answer-

able.   As is held in Ehrisman v. East Harrisburg Co., 150 Pa. 180 : " It is not negligence per se for a citizen to be anywhere upon such tracks (railways on streets).   So long as the right of a common user of the tracks exists in the public, it is the duty of passenger railway companies to exercise such watchful care as will prevent accidents or injuries to persons who, without negligence on their own part, may not at the moment be able to get out of the way of a passing car."   Or, as is said in Gilmore v. Railway Co., 153 Pa. 31, " Street railway companies have not an exclusive right to the highways upon which they are permitted to run their cars, or even to the use of their own tracks."   In both these cases the court is speaking of the relative rights of the public and the railway companies on the streets of cities and boroughs where the grant is of the right to occupy the surface in common with the public.   The construction of the track and the form of the rail are with a view to a user in common.   The right of the wagon, in certain particulars, is subordinate to that of the railway ; the street car has, because of the convenience and exigencies of that greater public which patronizes it, the right of way ; whether going in the same direction ahead of the car, or in an opposite one to meet it, the driver of the wagon must yield the track promptly on sight or notice of the approaching car ; but he is not a trespasser because upon the track ; he only becomes one if, after notice, he negligently remains there.

A careful examination of the whole evidence satisfies us there was no error committed in leaving the question of negligence to the jury.   The assignments of error are overruled and the judgment affirmed.