# Jackson, Appellant, *v.* United Traction Company.

*Negligence—Street railway—Collision between car and wagon.*

In an action to recover for the loss of a horse and damages to a wagon resulting from a head on collision between an electric car and the wagon, it appeared that the collision occurred on a rainy night at a point where there were two tracks of the defendant company. Plaintiff's wagon which was heavily loaded with lumber, and of unusual length, was on the left-hand track going against the course of the cars. The wagon was drawn by four horses and was accompanied by two men and a boy of sixteen. One of the men was driving the horses. In attempting to turn out from the left track the wheels became locked, and the wagon was dragged with the horses at an angle to the right, for a distance of some 350 feet, when it was

struck by an approaching car which had its headlight burning. At the time of the accident the second man accompanying the wagon was engaged in seeking something with which to throw the wagon wheels from the tracks. It did not appear what the boy was doing. The uncontradicted testimony of the motorman was that an electric light was hung over the street in such a way that he was unable to see the wagon until after passing the light. There was no light upon the wagon. There was evidence that the detention of the wagon on the track was caused in part at least by the worn condition of its tires. The evidence also showed that the man in charge of the wagon saw the approaching car, but gave no warning to the motorman. *Held,* that the plaintiffs' employees were guilty of contributory negligence, and that the court committed no error in giving binding instructions for defendant.

RICE, P. J. and ORLADY, J., dissented.

Argued May 11, 1901. Appeal, No. 165, April T., 1901, by plaintiffs, from judgment of C. P. No. 1, Allegheny Co., Sept. T., 1900, No. 168, on verdict for defendant in case of F. T. Jackson and W. J. Fulton, trading as Jackson & Fulton, v. United Traction Company. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Trespass to recover for the loss of a horse and damages to a wagon. Before BROWN, J.

The facts are stated in the opinion of the Superior Court.

The court gave binding instructions for defendant.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instructions for defendant.

*J. M. Swearingen,* for appellants.

*E. W. Smith,* with him *Knox & Reed* and *J. H. Beal,* for appellee.

OPINION BY WILLIAM W. PORTER, J., July 25, 1901:

It is not necessary to pass upon the adequacy of the testimony in respect to the speed of the car which collided with the plaintiff's wagon, to prove negligence upon the part of the motorman. There is sufficient in the evidence, to sustain the verdict (directed to be rendered for the defendant), upon the ground of contributory negligence. The collision between the car and

the lumber wagon took place about eleven o'clock upon a rainy night. The collision was what is sometimes called " head on." There were two tracks upon the street. The plaintiff's wagon was on the left-hand track going against the course of the cars.

The vehicle was somewhat unusual in its length and unwieldiness. It was heavily loaded with lumber. It was drawn by two wheel and two lead horses. It drew into Fifth avenue and in making the turn from Cliff street was compelled to swing across the avenue. There, getting upon the left-hand track, the testimony shows that the driver was unable to pull out and across to the right-hand track. This he says was because of the slipperiness of the tracks due to rain and the rounding of the wheel tires by previous wear. The wheels becoming locked the wagon was dragged, with the horses at an angle to the right, for a distance of some 350 feet, when it was struck by an approaching car which had its headlight burning. The wagon was accompanied by two men and a boy of sixteen. One of the former was driving the horses, the other was apparently seeking something with which to throw the wagon wheels from the tracks. What the boy was doing when the accident took place does not appear, although it was he who was sent in advance to see that the turning from Cliff street into Fifth avenue might be safely made. It is said that the street was lighted by electricity, but the testimony of the motorman is not contradicted that the light was hung over the street and between him and the wagon so that he was unable to see the wagon until after passing the light. The circumstances which convict the plaintiff's servants of negligence are that they had no light upon their wagon ; that with three persons in charge on finding themselves in a position of danger they sent no one in advance to warn an approaching car, although this act of caution had been performed when making the turn into Fifth avenue ; that seeing the car approaching they continued to drive toward it without warning the motorman of their plight ; that their detention upon the track of cars having the right of way, was caused in part at least by the worn condition of the tires of their wagon, and that, having a wagon longer than common drawn by an extended four horse team, they failed to exercise the care in its management which its peculiar character and condition demanded.

The judgment is affirmed.

RICE, P. J., dissenting:

Where the evidence is such that reasonable men may fairly differ as to the deductions to be drawn therefrom, the determination of the fact of negligence should be submitted to the jury. This, I respectfully submit, was a proper case for the application of this principle.

1. The court could not declare as a matter of law that the plaintiff's driver was a trespasser or guilty of negligence in being upon the left-hand track: Thatcher v. Central Traction Co., 166 Pa. 66; Smith v. Phila. Traction Co., 3 Pa. Superior Ct. 129.

2. Nor could the court declare as matter of law that he was not using due diligence to leave the track. The case is not the same as if he had taken the chances of remaining on the track until a car approaching from the other direction was so near that it could not be stopped in time to avoid the collision. His movement forward was necessitated by his efforts to turn his wagon off the track. He was not going recklessly forward oblivious of the fact that a car was likely to come around the curve at any moment.

3. According to his testimony the distance from Cliff street to the point where a car coming around the curve could be seen was about 600 feet. He had progressed about 300 or 350 feet of this distance when the car came in sight. He says it was about 250 feet distant when he first saw it. What was his duty under the circumstances ? If he had reason to believe as a man of ordinary prudence that the motorman could not see his plight, I would be willing to go to the length of saying that it was his duty—there being three persons on the wagon— to go or send some one ahead to warn the motorman. But was he bound to assume that the motorman with the aid of the street lights and the headlight could not see him at a distance of 250 feet? I do not think the court could declare to the jury that he was bound to so assume and to act on that assumption. Whether the motorman could, or in the exercise of due care ought to, have seen the wagon on the track with the horses turned in the apparent effort to get off the track was a question of fact for the jury. They were not bound to accept the motorman's testimony as verity. If the fact was that the motorman could have seen the wagon 250 feet distant, if he

had looked, the driver had a right to assume that the motorman would do his duty and bring his car under control so as to stop it, if, in the meantime, the driver was unable to get his wagon off the track. If however he could not see by reason of the street light and if the driver, as a man of ordinary prudence ought to have known this fact, then clearly the latter was negligent in not giving warning. But I do not think it could be declared as a matter of law that it is the imperative duty of one situated as the plaintiff's driver was to go or send some one ahead to warn the motorman of an approaching car, in a case where a jury might find and be warranted in finding that the plight he was in was in plain sight of the motorman.

It is to be observed, further, that if the car was going at the rate of eight miles an hour—and the jury would have been warranted in finding that it was going faster—it would traverse the distance of 250 or 300 feet from the point where it came in sight of the driver in less than thirty seconds. The question is what would a man of ordinary prudence be expected to do in that space of time when placed in such peril? He is not held to the standard of action of a man of unusual courage and self-possession. See Gibbons v. Wilkes-Barre, etc., St. Ry. Co., 155 Pa. 279. After a full examination of the case it seems to me that the question whether the driver was negligent in what he did or omitted to do after the car came in sight should have been submitted to the jury. The cases of Smith v. Phila Traction Co., 3 Pa. Superior Ct. 129, and Jones Bros. v. Greensburg, etc., St. Ry. Co., 9 Pa. Superior Ct. 65, are closely in point.

As to the omission of the plaintiffs to provide their wagon with a light and as to the condition of the wagon tires, it does not seem to me safe to lay down any unvarying rule of law. They were circumstances to be considered by the jury, I concede, but I do not think it can be declared as matter of law that they constituted negligence per se.

Judge ORLADY authorizes me to say that he concurs in the foregoing dissent.