# Kelly et al., Appellants, *v.* Pennsylvania Railroad Co.

*Negligence—Railroads—Position of peril—Sudden emergency—Soldier on guard at bridge—Contributory negligence.*

1. A soldier appointed to guard a railroad bridge will not be held guilty of contributory negligence as a matter of law, if that which is charged as negligence was done in obedience to the general orders of his superior officer, and the defendant railroad company, whose bridge was being guarded, had knowledge of, or upon inquiry could have ascertained what those orders were.

2. One properly upon the tracks of a railroad company has the right to assume it will exercise the utmost care to avoid injuring him, and cannot be held guilty of contributory negligence as a matter of law because he did not anticipate a neglect of duty upon its part.

3. One who without fault is placed in imminent peril by another, is not chargeable with contributory negligence because in the brief time in which he had to both decide and act, he did not select the best course to escape the threatened injury.

Argued March 25, 1919.   Appeal, No. 259, Jan. T., 1919, by plaintiffs, from order of C. P. No. 5, Philadelphia Co., Dec. T., 1917, No. 2173, refusing to take off nonsuit

in case of Vincent deP. Kelly by his father and next friend, Thomas W. Kelly, and Thomas W. Kelly in his own right, v. Pennsylvania Railroad Company. Before BROWN, C. J., MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Reversed.

Trespass to recover damages for personal injuries.

At the trial the court entered a compulsory nonsuit which it subsequently refused to take off. Plaintiffs appealed.

*Error assigned* was refusal to take off nonsuit.

*James J. Breen,* with him *James B. McGrane,* for appellant.—The case was for the jury: Van Zandt v. Phila. B. & W. R. R. Co., 248 Pa. 276.

In principle there is no distinction between the rights and duties of an employee of an independent contractor properly at work on the tracks of the railroad and those of a soldier stationed by his superior officers to guard the railroad tracks on a bridge: Glunt v. Penna. R. R. Co., 249 Pa. 522; Waina v. Penna. R. R. Co., 251 Pa. 213; Quinn v. Pittsburgh, 243 Pa. 522; Christman v. Phila., etc., Ry. Co., 141 Pa. 604; Wagner v. P. R. T. Co., 252 Pa. 354; Diehl v. Lehigh Val. R. R., 254 Pa. 404; Welsh v. P. R. T. Co., 63 Pa. Superior Ct. 143; Schmidt v. P. R. T. Co., 253 Pa. 502.

*Francis B. Biddle,* with him *Sharswood Brinton,* for appellee.—Under the authorities the plaintiff was clearly guilty of contributory negligence, which caused the accident: Railroad v. Norton, 24 Pa. 465; Phila. & Reading Ry. Co. v. Hummell, 44 Pa. 375; Phila. & Reading Ry. Co. v. Spearen, 47 Pa. 300; Mulherrin v. Del., Lack. & Western R. R. Co., 81 Pa. 366; Pittsburgh, Fort Wayne & Chicago Ry. Co. v. Collin, Penman v. McKeesport, Duquesne, etc., Ry. Co., 201 Pa. 247; Owens v. Peoples Pass. Ry., 155 Pa. 334.

OPINION BY MR. JUSTICE SIMPSON, April 21, 1919:

Vincent deP. Kelly, a minor, by his father and next friend Thomas W. Kelly, and Thomas W. Kelly in his own right, sued the Pennsylvania Railroad to recover for injuries to Vincent. The trial judge entered a nonsuit which the court in banc refused to set aside, and this appeal followed.

Vincent was a private in the 109th United States Infantry, and was one of a squad detailed to patrol the bridge of the Pennsylvania Railroad Company crossing the Delaware river from Bridesburg, Pennsylvania, to Delair, New Jersey. The bridge was about sixty feet above the bank of the river, ran approximately east and west, had on it two railroad tracks, one for eastbound and the other for westbound traffic, between the nearest rails of which was a distance of about four feet, and from the outer rail of each to the side of the bridge, which had no railing, was a distance of about eight inches. Some forty or fifty feet west of the bridge the tracks curved to the northward, preventing a view of eastbound trains while westbound trains were passing.

The orders given to the soldiers were that they should pace up and down the four-feet wide space between the tracks and across to the edge of the bridge, "protect the bridge and leave no loiterers around; nobody to pass under the bridge without a pass signed by an official of the railroad," and if a train or trains approached "the only instructions that we got was that when a train came in one direction, they were to get on the other track and avoid that train," and in the case of trains on both tracks "if they saw them their instructions were to lie down flat on their belly" in the four-feet space between the tracks. The reason for those instructions obviously was because the suction of passing trains made the space between the tracks dangerous, and therefore was not to be occupied while trains were passing, unless it was necessary so to do because of the approach of trains on

both tracks. There is no direct evidence showing defendant knew of these instructions, but it knew the bridge was being guarded by United States soldiers; it knew they were pacing up and down between the two tracks; it knew of the dangerous character of the location between the tracks; it knew there was no place beyond the tracks where the soldiers could go during the passage of trains; it knew the soldiers had to comply with the orders given them by their superior officers under penalty of military punishment; and quite probably it knew the orders specifying what those on guard should do while trains were passing, and even if it was ignorant thereof it had ample time to and could easily have ascertained what those orders were.

From plaintiffs' evidence, which on this appeal must be accepted as true, we find that on June 21, 1917, about 7:30 p. m., while Vincent was patrolling the east end of the bridge, a freight train approached from the New Jersey side. As it neared him, he looked to see if a train was coming on the eastbound track, and seeing none obeyed his orders and stepped on that track to await the passage of the freight train, carefully looking over the edge of the bridge to see if there were suspicious characters on the tracks below. As he straightened up after his inspection he saw for the first time an eastbound Atlantic City express train almost on him and approaching very fast, he attempted to jump out of the way, but before he could escape it struck him, threw him over the side of the bridge, and he received the injuries of which he complains. No signal was given of the approach of the train, and it was not visible because of the curve of the tracks and the presence of the freight train on the other track, and could not be heard because of the noise made by the latter.

It is conceded the question of defendant's negligence was for the jury, but it was contended, and the court below held, Vincent was guilty of contributory negligence because when the freight train approached he stepped

upon the other track instead of lying down in the space between the two sets of tracks. We think that conclusion is clearly erroneous. To have then laid down would not only have been in violation of his orders and have subjected him to military discipline, but it would also have prevented him from fully performing his duty. The United States Government had charge of the bridge at that time, and its soldiers cannot be put in the dilemma of being punished if they do not obey their superior officers, and, for the benefit of a negligent company whose property they are guarding, of being punished also if they do. Appellant might just as well claim that one of its own employees, strictly obeying its specific orders, should be held guilty of contributory negligence for so doing. The words imply the doing of something a party ought not to do, and cannot be construed to cover the doing of that which he ought to do. The subject has been so fully covered in our recent cases of Reed v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co., 243 Pa. 562, and Van Zandt v. Phila., Balt. & Washington R. R. Co., 248 Pa. 276, it is not necessary to elaborate the matter further.

Vincent was, of course, in a dangerous place and bound to exercise care to prevent injury; but the railroad company knew he or some of his fellows would be there, and it was also obliged to exercise the utmost care to avoid injuring them. He had a right to assume it would exercise that care, and give him warning of the approach of trains, and cannot be held guilty of contributory negligence because he did not anticipate a neglect of duty upon its part: Wagner v. Phila. Rapid Transit Co., 252 Pa. 354.

We have also repeatedly said one placed in imminent peril by the negligence of another, is not chargeable with contributory negligence because he does not select the best course to escape the threatened injury: Shaffer v. Beaver Valley Traction Co., 229 Pa. 533; Smith v. Standard Steel Car Co., 262 Pa. 550, 555. Being com-

pelled to act quickly as a result of defendant's negligence, he cannot be punished because he did not escape. This is exactly Vincent's position in the present case; the train was upon him before he had a chance to get out of its way, and it is for the jury to say whether or not he did everything reasonably required of him, in view of the situation in which defendant's negligence had placed him, and the brief time in which he had to both decide and act.

The judgment of nonsuit is reversed and a procedendo awarded.