## Arlia v. Philadelphia Transportation Company (No. 2)

*J. T. Maioriello,* for plaintiff.

*B. J. O'Connell, H. M. Tobin* and *I. J. Stern,* for defendant.

Bok, P. J., June 12, 1951.—Plaintiff recovered a verdict of $2,660. Defendant offered no evidence and the only motion before us is its motion for judgment n. o. v.

Plaintiff sold ice cream from a pushcart. On August 25, 1945, he was parked against the curb on Twenty-second Street between Ridge and Columbia Avenues, about 200 feet south of Columbia. When it was time to go home he looked north, saw no trolley car coming, and started north in the car tracks, pushing his cart before him, its wheels straddling the east rail. Automobiles were parked bumper to bumper on both sides of the street from the Ridge to Columbia. After he had gone about 100 feet or a little more, plaintiff saw a southbound trolley car stopped on the north side of Columbia Avenue, discharging and taking on passengers. When the trolley car started and crossed Columbia, plaintiff stopped his pushcart and waved to the motorman to stop. The motorman rang his gong and possibly slowed a little, but came on and struck plaintiff and his cart, throwing him against a parked automobile and injuring his back. There was no room between the rails and the parked cars to get the cart into a position of safety. The accident occurred about 50 to 75 feet south of Columbia Avenue.

The court asked him why he didn't leave the push-cart when he saw the trolley car coming and go to a place where he himself would be safe. His answer was:

"A. Well, that's all the money I had to live on, the pushcart, and that money I invest on pushcart, and if I leave that pushcart I have to go beg and live on charity, and I try to protect what I had. And I didn't know he would strike me. I thought he would have

sense enough not to hit me. My God, I don't know why he do that!"

Defendant's argument is that plaintiff was guilty of contributory negligence as a matter of law for having put himself in a position of danger on or too close to the track, and cites Magyar v. Pennsylvania R. R. Co., 294 Pa. 585 (1928); Hall v. Freaney, 345 Pa. 45 (1942); Rothweiler v. Philadelphia Rapid Transit Co., 93 Pa. Superior Ct. 369 (1927); Tait v. Philadelphia Transporatation Company, 153 Pa. Superior Ct. 449 (1943), and Greenberg v. McCusker et al., 154 Pa. Superior Ct. 36 (1943).

We do not regard this as the applicable rule, for reasons to be given.

Defendant also cites Elliott v. Philadelphia Transportation Company 356 Pa. 643 (1947), which rules that contributory negligence offsets ordinary negligence and that plaintiff's recklessness offsets defendant's wanton negligence. The instant case is not one of wanton negligence, as the complaint does not plead it. Plaintiff sought to amend the complaint and include this added element, but Judge Smith refused the motion on the ground that the amendment would alter the cause of action and that the statute of limitations had run.

We are of opinion that recovery should be allowed on the "rescue" theory. The A. L. I. Restatement of the Law of Torts, §472, provides:

"It is not contributory negligence for a plaintiff to expose himself to danger in a reasonable effort to save a third person or the land or chattels of himself or a third person from harm."

The authorities are clearly in accord with this statement so far as the rescue of a human being is concerned: Corbin v. Philadelphia, 195 Pa. 461 (1900); Alemento v. Bessemer and Lake Erie R. R. Co., 255 Pa. 588 (1917); Toner v. Pennsylvania Railroad Co.,

263 Pa. 438 (1919); DeGregorio et al. v. Malloy et al., 356 Pa. 511 (1947), and Fairman v. Dorney, 73 Pa. Superior Ct. 238 (1919).

There are no decisions in this State expressly on the point of the rescue of property. In other States authority is divided, and recovery has been allowed in such cases as Illinois Central Railroad Co. v. Siler, 133 Ill. App. 2 (1907), 229 Ill. 390, 82 N. E. 362; Wolfinger v. Shaw, 138 Neb. 229 (1940), 292 N. W. 731; Rovinski v. Rowe, 131 F. (2d) 687 (CCA, Mich.).

We see no distinction of principle between the two kinds of case. It is rather a question of the quantum of risk, as comment *a* to the restatement says:

"Thus, a plaintiff may run a greater risk to his own personal safety in a reasonable effort to save the life of a third person than he could run in order to save the animate or inanimate chattels of his neighbor or even of himself."

The whole matter rests on what is reasonable under all of the circumstances, and this is a question for the jury.

We start with the idea that plaintiff had a right to be on the street with his pushcart. In Craven v. Pittsburgh Railways Co., 243 Pa. 619 (1914), a street-cleaner with his cart turned on to the tracks to avoid an obstruction when the trolley car was 500 feet away. Once there, the wheels of the cart caught in the rails and slid. Plaintiff, trying to extricate the heavy cart, did not look again for the trolley until it was too close for him to get clear. The court declared the case one for the jury under all of the circumstances, saying:

"He was a street cleaner engaged upon his work, and this fact could be taken into account in measuring his alleged negligence."

In Wagner v. Philadelphia Rapid Transit Company, 252 Pa. 354 (1916), where a pedestrian at a street crossing was caught between two trolley cars going in opposite directions, the court said:

"A party is not bound to guard against the want of ordinary care on the part of another: he has a right to presume that ordinary care will be used *to protect him and his property* from injury. No one can complain of want of care in another where care is only rendered necessary by his own wrongful act." (Italics ours.)

In Lukaszewicz v. Pittsburgh Railways Co., 365 Pa. 29 (1950), recovery was allowed where a driver, because of an obstruction, parked his truck with the rear portion overhanging the tracks and was struck and injured before he could walk around the front of the truck to the pavement. The court said:

"Although defendant's right to use the track was superior to that of plaintiff to occupy it, nevertheless he was not prohibited from using it temporarily for a legal purpose."

We do not regard the Elliott case, supra (Elliott v. Philadelphia Transportation Company, 356 Pa. 643 (1947)) as analogous even on the ground of simple negligence and contributory negligence. There plaintiff stood on the rails alone to flag the trolley: the element of rescue was lacking, and if plaintiff thought the motorman would stop, the motorman could suppose that plaintiff would jump aside.

In the instant case plaintiff was trying to save what he called his only asset for making his living. This distinguishes the case from that of the obstinate man who stands his ground with nothing at stake but his obstinacy. Plaintiff was, in a sense, trapped in a long tunnel of parked cars. Whether he should have stayed, as he did, hoping somehow to soften the blow or shift the angle of the cart in order to reduce the damage to it, or have abandoned it to seek safety for his person, or have tried to outrun the trolley car southwards while dragging the cart before it—these were peculiarly matters for the jury. We cannot say as a matter of law that he was wrong in being rooted to

the spot or frozen to the cart in horror at the impending crash, or that his waving to the motorman to stop was insufficient.

What would be clear contributory negligence if there had been no cart is, in our opinion, rendered a jury question because of the cart and its crucial importance to plaintiff. He certainly had good reason to believe, standing there with his cart, that the motorman would stop before running him down.

A further word about him is unavoidable. He proved no doctor's bill or medical expenses, and he waved aside a figure of his earnings when asked by his counsel. He proved nothing but pain and suffering, and that alone is represented in the verdict. He was obviously a difficult and even intractable client, and the notes of testimony reveal that even the trial judge had trouble in shouting him down when he sprang to his feet during the closing speech of defendant's counsel and insisted that he had been called a liar. He interrupted his own counsel during his closing address. Since the trial he has written the trial judge a series of letters accusing everyone of discrimination, demanding a new trial because of the complete inadequacy of the verdict, and declaring that he has more witnesses to produce.

If he has other witnesses, he has had ample opportunity to bring them, and he did not begin to make the demand to be allowed to do so until he felt that the trial was going less favorably than he desired. This is the fourth time the case has come to trial and the third time that he has given testimony. We do not criticize his counsel for not joining in his client's request for a new trial: rather we commend him for handling a truculent client with restraint. Plaintiff has had as fair a trial as he would allow, he received a full and even charge, and if he did not have all the witnesses he wanted, it is no one's fault but his. We therefore feel that the litigation should be concluded.

Although his injury was painful and continuous, the jury had him and his conduct to evaluate, and we are not disposed to overturn its conclusion.

The motion for judgment n. o. v. is overruled and judgment is entered on the verdict.